UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILIE M. JONES                                CIVIL ACTION

VERSUS                                        NUMBER: 07-4192

MICHAEL J. ASTRUE,                            SECTION: "F"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Supplemental Security Income ("SSI") benefits based on disability. (Rec. docs. 11, 15).

Willie M. Jones, plaintiff herein, protectively filed the subject application for SSI benefits on January 24, 2005, initially alleging disability as of August 15, 1998 but later amending his application to coincide with the protective filing date. (Tr. pp.

75, 379).[1]/ In a Disability Report completed by plaintiff on August 1, 2005, he identified pancreatitis and insulin-dependent diabetes mellitus as the conditions resulting in his inability to work. (Tr. pp. 69-74). Jones' application for SSI benefits was denied at the initial step of the Commissioner's administrative review process on April 29, 2005. (Tr. pp. 33-36). Pursuant to plaintiff's request, a hearing de novo before an Administrative Law Judge ("ALJ") went forward on November 7, 2006 at which plaintiff, who was represented by counsel, appeared and testified. (Tr. pp. 32, 376-389). On November 24, 2006, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 7-15). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 3-5). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his motion for summary judgment, plaintiff frames the

---

[1]/ The actual application for SSI benefits is not included in the administrative record. What the record does contain, however, is a previous application for SSI benefits plaintiff had filed on June 2 or 5, 2004 with the same alleged onset date of August 15, 1998. (Tr. pp. 37-39). That application was initially denied by the Commissioner on September 10, 2004 and was not appealed further. (Tr. pp. 28-31).

issues for judicial review as follows:

> I.   The ALJ's residual functional capacity determination does not comport with the medical evidence.

> II.  The ALJ erred in failing to follow the strictures of 20 C.F.R. §404.1527 after not giving controlling weight to plaintiff's treating physician.

> III. The ALJ erred in failing to obtain the testimony of a vocational expert despite the presence of a non-exertional impairment.

> (Rec. doc. 11-3, p. 12).

Relevant to the issues to be decided by the Court are the following findings made by the ALJ:

> 1.   [t]he claimant has not engaged in substantial gainful activity since the alleged onset date.

> 2.   [t]he claimant has the following medically determinable severe impairments: insulin dependent diabetes mellitus; and chronic pancreatitis, status post pseudocyst excisions.  The claimant also has a drug abuse history, in reported sustained remission, which I find to be not medically determinable on the instant record.

> 3.   [t]he claimant's impairments neither meet nor medically equal the criteria of any impairments listed in 20 CFR Part 404, Subpart P, Appendix A.

> 4.   [t]he claimant's statements relating to his impairments, symptoms and functional limitations are exaggerated.

> 5.   [t]he claimant has the residual functional capacity to do a full range of sedentary work, involving the ability to lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently; to sit for a total of 6 hours in an 8-hour day; and to stand and/or walk for a total of 2 hours in an 8-hour day.

6.    [t]he claimant has no past relevant work.

7.    [t]he claimant at 46 is a younger individual with a
      limited education.

8.    [a]s the claimant retains the ability to do a full range
      of sedentary work, Medical Vocational Rule 201.18 directs
      a finding of "not disabled."

9.    [t]he claimant is not disabled from working and is not
      entitled to disability benefits by virtue of the instant
      Title XVI application.

(Tr. pp. 14-15).

Judicial review of the Commissioner's decision to deny SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues <u>de novo</u>, nor may it substitute its judgment for that of the Commissioner. <u>Cook v. Heckler</u>, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. <u>Patton v. Schweiker</u>, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act. <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. <u>Harrell</u>, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §416.920, as follows:

> 1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. an individual who does not have a "severe impairment" will not be found to be disabled.

3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

4. if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

5. if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). If the claimant carries that burden and successfully demonstrates that he is unable to perform the work that he has done in the past, the burden of proof shifts to the Commissioner at the fifth step to show that the claimant can perform other work in light of his age, education, work experience, and physical limitations. Kramer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). In determining whether there is other work available that the claimant can perform, the Commissioner may rely exclusively on the Medical-Vocational Guidelines of the Regulations when the claimant suffers only from exertional impairments or when

his non-exertional impairments do not significantly affect his residual functional capacity. <u>Selders v. Sullivan</u>, 914 F.2d 614, 618 (5th Cir. 1990); <u>Fraga</u>, 810 F.2d at 1304. Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th Cir. 1988); <u>Fraga</u>, 810 F.2d at 1302.

At the time of the administrative hearing that was held on November 7, 2006, plaintiff was forty-six years of age and had completed nine years of formal education. Plaintiff related a long history of pancreatic problems which began in the 1980's and resulted in surgery in 1994. That surgery was initially beneficial but plaintiff's pain subsequently worsened and was relieved only if he balled up in the fetal position. However, plaintiff added that his prescription medication did suppress the pain and helped him cope with it. As a result of his pancreatic problems, plaintiff testified that he had developed insulin-dependent diabetes mellitus which caused constant pain and swelling in the feet and a need to elevate his lower extremities as frequently as possible.

Upon being questioned by the ALJ, plaintiff testified to smoking 1.5 packs of cigarettes per day. He had stopped drinking alcohol around 1990 as it had contributed to his pancreatic difficulties. Plaintiff also testified to being incarcerated from 1999 to 2004 following a conviction for possession of cocaine for

which he was on probation at the time of the hearing until 2009. While in prison, plaintiff testified that he was essentially restricted from strenuous work and was given a job which involved fifteen minutes of walking followed by twenty minutes of sitting. Medical care was readily available as was access to prescription medications. Plaintiff acknowledged that one of the conditions of his probation was that he look for work if he was able to.

After being tendered back to his attorney, plaintiff testified to suffering from diabetes that was somewhat under control but had to be monitored and treated with insulin. His doctor had reportedly diagnosed him as suffering from severe, chronic, extreme edema in the feet and advised him to elevate them frequently which plaintiff estimated that he did sometimes all evening and sometimes two to three hours in the morning. Plaintiff's gallbladder had been removed in September of 2005 but the discomfort associated with that condition did not compare with his pancreatic pain. Once again, plaintiff testified that the pain was only relieved by assuming the fetal position; during extreme exacerbations he was unable to sit, lie down, eat, or drink and occasionally had to be admitted to the hospital to receive IV fluids. In terms of frequency and duration, plaintiff testified that he experienced these severe exacerbations three to four times per week, some lasting a couple of days and others lasting a week and culminating

in his hospital admission.  Upon questioning by the ALJ, however, plaintiff reduced the frequency of these episodes to two to three times per week with moderate flare-ups lasting one to two days but the longest period of time between the episodes was only two to three days.

Finally, plaintiff offered testimony on his daily activities. He typically rose at 7:00/7:30 a.m., checked his blood sugar, gave himself an insulin injection, prayed, and then sat and elevated his feet.  Three times per week he tried to walk the one-block distance to the corner of his street which he could not always do secondary to foot pain.  In terms of prescription medications, plaintiff took up to six Vicodin ES per day for pain relief which left him unable to do almost everything except sleep.    He also took Amitriptyline.[2] When asked why he was unable to work, plaintiff identified pancreatic and foot pain and the constant need to elevate his lower extremities to reduce swelling. (Tr. pp. 376-389).

The medical evidence generated during the relevant time period[3] begins with Records documenting plaintiff's treatment

---

[2] Amitriptyline is indicated for the treatment of depression and anxiety.  <u>Physicians' Desk Reference</u>, p. 3300 (62nd ed. 2008).

[3] As a general rule, an ALJ is required to develop the medical history of a SSI claimant for the twelve months prior to the date that the application for benefits was filed.  <u>Parker v.</u>

while he was incarcerated at the Washington Correctional Institute ("WCI"), Angie, Louisiana. Plaintiff was seen by the prison doctor on January 5, 2004 and was prescribed Tylenol for occasional pain related to his chronic pancreatitis. (Tr. p. 111). A mental status exam conducted on February 18, 2004 was normal. (Tr. p. 108). Plaintiff complained of increased gas and nauseousness when he was next examined on March 2, 2004; Lactaid was prescribed. (Tr. p. 106). By March 16, 2004, plaintiff was said to be doing "much better". (Tr. p. 104). Plaintiff was released from WCI in May of 2004. (Tr. p. 11).

Subsequent to his release, plaintiff came to be monitored by Dr. Trainor at the Slidell Memorial Hospital ("SMH") for his pancreatitis and diabetes, first being seen there on July 12, 2004. At that time, plaintiff was prescribed Pancrease, Phenergan, and Vicodin. (Tr. p. 354). Plaintiff complained of increased acid reflux on November 1, 2004 and was also prescribed Prevacid in addition to being given refills on his other medications. (Tr. p. 353). Increased abdominal pain was the chief complaint on January 7, 2005 and plaintiff was continued on his medications. (Tr. p. 352). In a Disability Report completed by plaintiff on January 28,

---

Astrue, 2008 WL 544386 at *2 (D. Kan. 2008); Winters v. Barnhart, 2002 WL 1286134 at *10 (D. Kan. 2002). In the instant case, the relevant time period thus begins on January 24, 2004.

2005, he indicated that he could tend to his own personal needs, could prepare simple meals two to three times per week, and perform light household chores but was unable to do yardwork and did no shopping. He could walk only a half of a block before needing to rest and reported that his abdominal pain was sometimes so intense that all he could do was to ball up in the fetal position on his bed and rock. (Tr. pp. 47-54). Plaintiff failed to keep a follow-up appointment at SMH scheduled for March 21, 2005. (Tr. p. 352).

On April 11, 2005, plaintiff was consultatively evaluated by Dr. Miljana Mandich at the request of the State Disability Determination Services. Plaintiff related his 1995 pancreatic pseudocyst surgery to the doctor and complained of daily epigastric pain in addition to periodic flare-ups of severe pain. He reported being briefly hospitalized in the prison infirmary in 2003 and February of 2004 and stated that he had begun being followed by Dr. Timothy Trainor, a gastroenterologist, since being released from WCI. Medications at the time included Vicodin ES, up to three times per day as needed for flare-ups of pain, Phenergan, Novolin, and Pancrease. Plaintiff expressed concern over the circulation in his left leg because he had periodic tingling down the back of the leg as well as the top of the foot and toes. However, plaintiff ambulated without difficulty, had a normal range of motion of the neck and lower back, could heel-to-toe walk, and could squat

approximately 2/3 of the way down and rise without support. On physical examination, plaintiff's abdomen was soft and non-tender with no organomegaly. The diagnosis was: 1) a history of alcohol abuse and chronic pancreatitis with status post abdominal surgery for pancreatic pseudocyst in 1995 and 2) insulin dependent diabetes since 2000 secondary to chronic pancreatitis. In the summary portion of his report Dr. Mandich indicated that plaintiff's last severe flare-up of abdominal pain had been over a year earlier in February of 2004 and that plaintiff's daily epigastric pain was minimized by following a strict diet that had been recommended by his physician. The doctor remarked that there had been no changes to plaintiff's weight and no other significant findings and that plaintiff's "... physical examination is completely unremarkable including a benign abdomen with a long semi-circular scar across the upper abdomen." (Tr. pp. 221-227).

On April 27, 2005, an Administration disability examiner reviewed the medical Records then extant and thereafter completed a Physical Residual Functional Capacity Assessment form which set forth his opinions on plaintiff's capabilities. There, the examiner checked off boxes on the form indicating that plaintiff had no exertional, postural, manipulative, visual, communicative, or environmental limitations whatsoever. In rendering his opinions, the examiner made a specific finding that "CL[AIMANT] IS NOT

CREDIBLE. PHYSICAL FINDINGS DO NOT SUPPORT ALLEGED FUNCTIONAL LIMITATIONS", ultimately concluding that plaintiff's conditions were "PHYSICALLY NONSEVERE." (Tr. pp. 228-235).

Plaintiff presented himself to the SMH Emergency Department on April 28, 2005 with complaints of burning, generalized abdominal pain which had begun the previous day. Various tests were run including a CT can which revealed gallstones only but no acute findings. Plaintiff was discharged home in stable condition after obtaining a resolution of his abdominal pain with medications and was instructed to follow-up with Dr. Trainor. (Tr. pp. 238-247, 348-351). Plaintiff did so on May 9, 2005 and advised the doctor of his recent emergency room visit and the fact that he had suffered a spell that lasted almost a week and "came and went" for several days. However, plaintiff felt fine at the time. Plaintiff was to obtain an appointment at Charity Hospital of New Orleans ("CHNO") for possible surgery to his gallbladder and his prescriptions for Vicodin and Pancrease were renewed. (Tr. p. 347).

When plaintiff returned to Dr. Trainor on June 14, 2005, his chief complaint was pain in the center of the abdomen with nausea. The pain was said to wax and wane but it never completely went away and was worse with food. Plaintiff was referred to the Bogalusa Charity Hospital, was prescribed Vicodin and Phenergan, and was additionally given some Prevacid samples. (Tr. p. 346). On July

25, 2005, plaintiff reported having had another gallbladder attack for which he had gone to the Bogalusa Charity Hospital and was scheduled for an ultrasound the following day. Plaintiff had exhausted his supply of pain medication by this time. The impression was chronic pain/nausea and cholelithiasis and plaintiff was prescribed Vicodin, Phenergan, and Prevacid. (Tr. p. 345). On August 1, 2005, plaintiff visited the Social Security Office and was interviewed in addition to completing a Work History Report and a Disability Report. Plaintiff reported chronic stomach pain that was so severe that he could not even hold a conversation or walk more than a short distance. Plaintiff was noted to grab his stomach once during the interview but he exhibited no difficulties in sitting, standing, walking, or any other capability. (Tr. pp. 62-77).

Plaintiff presented himself to the SMH Emergency Room on September 9, 2005 with complaints of abdominal pain and fever. He was admitted to the hospital and, following various testing and consultations, underwent surgical gallbladder removal on September 12, 2005. Plaintiff was discharged home in stable condition on September 16, 2005 with a prescription for Dilaudid and instructions to resume a regular diet and activities as tolerated. (Tr. pp. 248-299). He returned to Dr. Trainor for follow-up care on September 20, 2005 and it was noted that his weight had dropped

to 124 pounds. Plaintiff advised the doctor that he was usually able to get by with two to three Vicodins per day. The impression was pancreatic insufficiency and chronic pain and plaintiff was prescribed Vicodin and Pancrease. (Tr. p. 344). By November 7, 2005, plaintiff reported significant epigastric pain and nausea but his weight had increased to 134 pounds. (Tr. p. 343). Plaintiff's weight had increased even further to 143 pounds by December 19, 2005 but he complained of swelling to the feet and ankles. He had apparently been prescribed Amitriptyline which he indicated was helpful with sleep and his chronic pain. The diagnosis was minimal pedal edema, diabetes, and chronic pain secondary to pancreatitis and plaintiff's medications were refilled. (Id.).

On February 4, 2006, plaintiff returned to the SMH Emergency Room following an acute exacerbation of his pancreatitis manifested by intractable pain and vomiting. Plaintiff was admitted to the hospital and it was decided to treat him conservatively following GI and surgery consultations. He responded well to conservative treatment and was discharged home on February 9, 2006 with instructions to resume activities as tolerated and with discharge medications of Novolin, Vasotec, Creon, Dilaudid, Phenergan, and Protonix. (Tr. pp. 300-328, 338-342). Plaintiff was followed by Dr. Trainor on February 14, 2006 and the two had a long discussion regarding his condition and the high-risk nature of a

pancreatectomy.  The diagnosis was chronic pancreatitis, diabetes mellitus, and chronic pain and plaintiff's medications were refilled. (Tr. p. 336).

Plaintiff was seen again by Dr. Trainor on April 4, 2006 and he complained of a recent increase in pain as well as pain in both legs such that he could hardly walk.  He was having to take more of his prescribed pain medication but a consultation with a pain management specialist was ruled out due to financial concerns. Plaintiff was, however, to consult with Dr. Houser to check his leg weakness.  Plaintiff's medications were refilled. (Tr. p. 335).  On June 19, 2006, plaintiff advised Dr. Trainor that he was still in "lots of pain", then having to take upwards of six pills per day for relief.  He had exhausted his supply of pain medication and Prevacid.  The progress note was positive for diabetic neuropathy/trace pedal edema.  Plaintiff's prescription for Vicodin was refilled, not to exceed six per day, and the dosage of Amitriptyline was increased. (Tr. p. 334).

The final two pieces of documentary evidence contained within the administrative record were both authored by Dr. Trainor.  The first was a Physical Capacity Evaluation (PCE) form dated June 20, 2006 that had apparently been provided to the doctor by plaintiff's attorney. There, Dr. Trainor checked off boxes on the form indicating that plaintiff could stand, walk, or sit for less than

one hour per eight-hour workday; could frequently or occasionally lift/carry less than ten pounds; could not use his hand for repetitive pushing/pulling or fine manipulation and fingering; could not use his feet for repetitive movements such as operating foot controls; could occasionally bend but could never kneel, squat, crawl, climb stairs, or climb ladders. Dr. Trainor attributed these limitations to "diabetic neuropathy due to insulin dependent diabetes due to pancreatectomy." He also checked off boxes on the form indicating that plaintiff suffered from marked limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances and in his ability to complete a normal work day and week without interruptions from medically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In answer to the final question on the form, Dr. Trainor indicated that plaintiff was not able to tolerate stress. (Tr. pp. 330-332). The second piece of documentary evidence authored by Dr. Trainor was a prescription pad note bearing a date of December 15th but no year. On that note the doctor wrote that plaintiff had chronic pancreatitis and chronic pain secondary to that condition, had undergone distal pancreatectomy and was on enzyme replacement due to pancreatic insufficiency, and was not able to be gainfully employed. (Tr. p.

329).

As noted earlier, plaintiff challenges the Commissioner's decision to deny SSI benefits on three grounds. In the third of those challenges, plaintiff alleges that the ALJ erred in failing to obtain the testimony of a vocational expert despite the presence of a non-exertional impairment. Plaintiff argues that the medically determinable severe impairments he was found to suffer from - diabetes and chronic pancreatitis with status-post pseudocyst excision-result in mental, postural, and manipulative limitations because of the severe pain caused by the impairments. Finding that contention to have merit, it will be recommended, for the reasons that follow, that plaintiff's case be remanded to the Commissioner for further proceedings.[4]

The Commissioner may rely exclusively on the Medical-Vocational Guidelines of the Regulations ("Grids") when the claimant suffers only from exertional impairments or when his non-exertional impairments do not significantly affect his residual functional capacity. Selders, 914 F.2d at 618; Fraga, 810 F.2d at 1304. Limitations are exertional if they affect the claimant's ability to meet the strength demands of jobs and they include

_____

[4] In light of the Court's recommendation with respect to plaintiff's third challenge to the Commissioner's decision, a discussion of the first two challenges will be pretermitted here.

capabilities such as sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. §416.969a(b). Non-exertional limitations are those that affect a claimant's ability to meet the demands of jobs other than strength demands. 20 C.F.R. §416.969a(c). Examples of non-exertional impairments include a claimant's inability to function due to nervousness, anxiety, or depression; a claimant's difficulty maintaining attention or concentration; a claimant's difficulty understanding or remembering detailed instructions; a claimant's difficulty in seeing or hearing; a claimant's difficulty tolerating some physical features of certain work settings; and, a claimant's difficulty performing the manipulative or postural functions of some work, such as reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. §416.969a(c)(i)-(vi).

While mild or moderate pain will not render a claimant disabled, Richardson v. Bowen, 807 F.2d 444, 448 (5th Cir. 1987), pain can constitute a non-exertional impairment that limits the range of jobs that a claimant would otherwise be able to perform. Fraga, 810 F.2d at 1304. The question thus becomes whether plaintiff's pain significantly limited to his ability to perform sedentary work. Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999).

Plaintiff testified to being in constant pain as a result of

his pancreatitis. Since July 12, 2004, plaintiff has been prescribed Vicodin ES for pain relief and by the time of the administrative hearing he was taking six of those per day with instructions from his physician not to exceed that amount. Plaintiff complained of significant pain on a regular basis and on at least four separate occasions, Dr. Trainor made a specific diagnosis of chronic pain. One of plaintiff's pancreatic flare-ups resulted in a hospital admission of four to five days and on the last occasion that he was seen by Dr. Trainor the treatment note was positive for diabetic neuropathy, a condition that could also be expected to result in the pain alleged. This is not a case, for example, where a claimant's back pain was relieved merely with heat and was thus properly found to be sufficiently insignificant such that reliance on the Grids was proper. See Hernandez v. Shalala, 41 F.3d 665, 1994 WL 685062 at *3 (5th Cir. 1994)(table). Under these circumstances, the Court believes that the testimony of a vocational expert is the more appropriate means by which the Commissioner could discharge his burden of proof at step five of the sequential analysis required by §416.920.

### RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's case be remanded to the Commissioner for the purpose of eliciting testimony from a vocational expert at the fifth step of the

sequential analysis required by 20 C.F.R. §416.920.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this <u>27th</u> day of <u>January</u>, 2009.


ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE